IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DOMINIQUE BELL<br>28100 Detroit Road, Unit D3<br>Westlake, Ohio 44145 | )<br>)<br>)<br>) | CASE NO.<br><br>JUDGE: |
| Plaintiff, | )<br>) | |
| v. | )<br>) | **COMPLAINT FOR DAMAGES** |
| | ) | **AND INJUNCTIVE RELIEF** |
| ROBERT A. McDONALD<br>SECRETARY OF VETERANS AFFAIRS<br>810 Vermont Ave., N.W.,<br>Washington D.C. 20420 | )<br>)<br>)<br>)<br>) | **JURY DEMAND ENDORSED**<br>**HEREIN** |
| Defendant. | )<br>) | |

Plaintiff, Dominique Bell, by and through undersigned counsel, as her Complaint against Defendant, states and aver the following:

### PARTIES & VENUE

1. Plaintiff Dominique Bell is a resident of the city of Cleveland, Cuyahoga County, state of Ohio.

2. Defendant Robert A. McDonald is the Secretary of Veterans Affairs.

3. The Department of Veterans Affairs has its principle place of business located at 810 Vermont Ave. N.W., Washington D.C. 20420.

4. At all times herein, Bell was acting in the course and scope of her employment.

5. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 in that Plaintiff is alleging Federal Law Claims under the Family Medical Leave Act ("FMLA"), Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act ("ADA"), and 42 U.S.C. § 12101 *et seq.*



6. This Court has supplemental jurisdiction over the state law claims pursuant to of 29 U.S.C. § 2615(a).

7. All material events alleged in this Complaint occurred in Cuyahoga County.

8. Venue is properly placed in the United States District Court for the Northern District of Ohio, Eastern Division, because it is the district court for the district, division, and county within which where the material facts in this matter took place.

9. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

10. Personal jurisdiction is proper over Defendant pursuant to Ohio R.C § 2307.382 (A)(1).

11. Venue is proper pursuant to Civ. R. 3(B)(3).

12. Bell received her Final Agency Decision or Order on December 19, 2015, which has been attached hereto as Plaintiff's Exhibit 1.

13. Bell has filed this Complaint within 90 days of the issuance of the Final Agency Decision.

14. Bell has properly exhausted her administrative remedies pursuant to 29 C.F.R. § 1614.407(b).

## FACTS

15. Bell is a former employee of the Department of Veterans Affairs.

16. On or about June 7, 2009, Bell began working for The Department of Veterans Affairs.

17. Bell worked in the Veterans' Benefit Administration National Call Center ("NCC") as a Legal Administrative Specialist.

18. On October 10, 2013, Union Vice President, Jason Bluy began making sexual comments to Bell.

19. Bluy sent Bell suggestive and sexually explicit text messages.

20. Bluy repeatedly made references to "his package" to Bell.

21. Bluy repeatedly told Bell that she "couldn't handle this" while referring to his genitals.



The Employee's Attorney.™

22. On March 3, 2014 Bluy sent Bell a text message stating, "I want to lick your ass."

23. Bell told Bluy to stop making unwanted sexual advances toward her.

24. Bell rebuffed Bluy's unwelcome and sexually inappropriate conduct.

25. Bell complained about Bluy's sexual comments to her NCC managers.

26. Bell complained about Bluy's unwanted sexual advances to her NCC managers.

27. The Department of Veterans Affairs investigated Bell's claims.

28. As a result of their investigation, on May 27, 2014, The Department of Veterans Affairs issued a directive that Bluy was to have no contact with Bell (the "Directive").

29. Following the investigation, The Department of Veterans Affairs did not terminate Bluy.

30. After the Directive, Bluy continued to be present in the building in which Bell worked.

31. After the Directive, Bell saw Bluy constantly at work.

32. Bluy continued making sexual comments to Bell from October 10, 2013 until January 9, 2015.

33. On October 10, 2013, there was a Federal Government Shutdown.

34. NCC personnel were exempted from the Shutdown.

35. Bell was scheduled to work October 10, 2013.

36. NCC management informed NCC employees that leave was not authorized during the Shutdown.

37. NCC employees that were to be absent during the shutdown needed to be furloughed for the entire day.

38. Bell had a doctor's appointment October 10, 2013.

39. Bell did not return to work on October 10, 2013, after her doctor's appointment, because she was furloughed.



40. Bell's supervisor charged Bell with 2 hours Absent Without Leave ("AWOL") because Bell did not report back after her doctor's appointment.

41. Other NCC personnel took off the entire day for doctor's appointments, but were not charged AWOL.

42. On December 3, 2013, Bell was taken off of work due to medical issues.

43. Bell's doctor informed her that she would not be able to return to work until January 3, 2014 at the earliest.

44. Bell could not return to work until she was cleared by her doctor.

45. Bell was granted FMLA for December 3, 2013 until January 3, 2014.

46. Bell informed NCC management that she was unable to get a doctor appointment until January 13, 2014.

47. Bell informed NCC management that she would unable to get cleared to return to work prior to January 13, 2014.

48. Bell was cleared to return to work on January 14, 2014.

49. NCC management charged Bell with AWOL for each day Bell did not work between January 3, 2014 and January 14, 2015.

50. Defendant did not engage in any interactive process to determine if Bell's time off was a reasonable accommodation.

51. The AWOL charges for each day Bell did not work between January 3, 2014 and January 14, 2015 were eventually reversed.

52. On March 21, 2014, NCC management issued Bell a Notice of Proposed Suspension ("Notice") due to her AWOL charges from October 10, 2013 and January 3-13, 2013.

53. Bell was issued a 3 day suspension on April 15, 2014 in conjunction with the Notice.

54. Bell's April 15, 2014 suspension was rescinded on April 18, 2014.



55. Bluy was Bell's union representative during these disciplinary proceedings.

56. Bluy's harassing behavior towards Bell impacted Bell's ability to successfully dispute the charges.

57. Bell became anxious and depressed because of her daily contact with Bluy.

58. Bell had preexisting mental health issues, anxiety and depression.

59. Bell's continued contact with Bluy exacerbated her pre-existing mental health conditions.

60. As a result of suffering from anxiety and depression, Bell is disabled.

61. In the alternative, Defendant perceived Bell as being disabled.

62. In the alternative, Defendant perceived that Bell's medical condition constituted a mental impairment.

63. In the alternative, Defendant perceived Bell's anxiety and depression to substantially impair one or more of his major life activities, including working.

64. Despite this actual or perceived disabling condition, Bell was still able to perform the essential functions of her job.

65. Bell initially requested an accommodation of more frequent breaks, as her medication caused her to use the restroom more frequently.

66. On April 22, 2013, The Department of Veterans Affairs gave Bell the reasonable accommodation of extra time away from her duties each workday..

67. On August 5, 2014, after Bell complained about Bluy, Bell was informed that she was no longer allowed to take frequent breaks.

68. On August 5, 2014, The Department of Veterans Affairs informed Bell that if she needed more breaks, she would need to take leave or work longer days.

69. On August 5, 2014, The Department of Veterans Affairs informed Bell that she needed to track all of her non-work time and keep this record on a visible place on her desk.

The Employee's Attorney.™ 

70. On or about April 2014, May 2014, and November 2014, Bell requested a hardship transfer to avoid further contact with Bluy.

71. Bell requested a hardship transfer to a different floor or a different office in the Cleveland Metro area.

72. In May 2014 Bell's hardship transfer was denied.

73. Defendant denied Bell's April 2014 hardship transfer, claiming that she needed to provide medical documentation showing the transfer was necessary.

74. In July 2014 Bell's hardship transfer was denied.

75. Defendant denied Bell's May 2014 hardship transfer, claiming that she needed to provide medical documentation showing the transfer was necessary.

76. In November 2014 Bell's hardship transfer was denied.

77. Defendant denied Bell's November, 2014 hardship transfer, claiming that she needed to provide medical documentation showing the transfer was necessary.

78. Bell experienced ongoing harassment because of her disability.

79. Bell experienced ongoing harassment in retaliation for reporting the sexual harassment.

80. Bell experienced ongoing harassment in retaliation for taking FMLA.

81. On January 9, 2015, Bell was forced to resign because the Agency failed to remedy ongoing harassment.

## COUNT I: DISABILITY DISCRIMINATION

82. Bell restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

83. Bell suffers from anxiety and depression.

84. Bell is disabled.

85. In the alternative, Defendant perceived Bell as being disabled.



86. Bell's condition constituted a mental impairment.

87. Bell's medical condition substantially impaired one or more of her major life activities including working.

88. Defendant perceived Bell's condition to substantially impair one or more of her major life activities including working.

89. Defendant treated Bell differently than other similarly-situated employees based on her disabling condition.

90. Defendant treated Bell differently than other similarly-situated employees based on her perceived disabling condition.

91. Defendant violated R.C. § 4112.01 *et seq.* and 42 U.S.C §12101 *et seq.* by discriminating against Bell based on her disabling condition.

92. As a direct and proximate result of Defendant's conduct, Bell suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

### COUNT II: FAILURE TO PROVIDE REASONABLE ACCOMMODATION

93. Bell restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

94. Defendant had knowledge of Bell's disabilities at all relevant times during her employment.

95. Bell requested accommodations from Defendant to assist her with her disabilities.

96. Bell's requested accommodations were reasonable.

97. Bell's requested accommodations did not present an undue hardship on Defendant in providing those reasonable accommodations.

98. Defendant knew that Bell would be able to perform all her essential job functions with reasonable accommodation.



99. Defendant failed to provide reasonable accommodations to Bell that would have allowed her to continue to perform her essential job functions as well as alleviated the effects of her disabilities.

100. As a direct and proximate result of Defendant's conduct, Bell suffered and will continue to suffer damages.

### COUNT III: SEXUAL HARASSMENT - HOSTILE WORK ENVIORNMENT

101. Bell restates each and every paragraph of this Complaint as though it were fully restated herein.

102. Bell was subjected to unwelcomed sexual harassment in the form of sexual comments, inappropriate sexual gestures, and sexual advances.

103. Bluy created and sustained an environment of severe and pervasive sexual harassment in the form of unwelcomed sexual comments, inappropriate sexual gestures, and sexual advances.

104. As a direct and proximate result of the intimidating, offensive and hostile environment created and sustained by Bluy, Bell repeatedly reported the sexual harassment to her supervisor.

105. Defendant's actions amount to discrimination on the basis of sex through the creation of a hostile work environment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* and O.R.C. §4112.02(A).

106. Bluy's sexual harassment of Bell occurred while he was acting in the course and scope of his employment at the NCC.

107. Bell's supervisors had knowledge of Bluy's sexual harassment and failed to take sufficient corrective or remedial action.



Case: 1:16-cv-00375-SO  Doc #: 1  Filed: 02/18/16  9 of 14.  PageID #: 9

108. As a direct and proximate result of Defendant's actions, Bell has suffered and will continue to suffer injury and damages, including economic, emotional distress and physical sickness damages.

## COUNT IV: RETALIATION

109. Bell restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

110. During her employment, Bell complained to Defendant about the sexual harassment and discriminatory statements directed towards her by Bluy.

111. Bell's complaints constituted protected activity under Title VII of the Civil Rights Act of 1964.

112. Pursuant to R.C. §4112.02(I), it is an unlawful discriminatory practice "to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section…"

113. After participating in protected activity, Defendant retaliated against Bell.

114. At all times, the retaliation Bell suffered from Defendant was motivated by her participation in protected activity.

115. After participating in protected activity Defendant did not approve Bell's transfer requests.

116. Defendant's action constitutes unlawful retaliation by Defendant under Title VII of the Civil Rights Act of 1964.

117. As a direct and proximate cause of Defendant's conduct, Bell suffered and will continue to suffer damages.



## COUNT V: RETALIATION IN VIOLATION OF THE FAMILY MEDICAL LEAVE ACT

118. Bell restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

119. During her employment, Bell utilized FMLA leave.

120. After Bell utilized her qualified FMLA leave, Defendant retaliated against her.

121. Defendant retaliated against Bell by counting her absences as AWOL.

122. Defendant retaliated against Bell by giving her a three-day suspension.

123. Defendant retaliated against Bell by failing to correct the ongoing harassment.

124. Defendant retaliated against Bell by denying her transfer requests.

125. Defendant willfully retaliated and discriminated against Bell in violation of 29 U.S.C. § 2615(a).

126. As a direct and proximate result of Defendant's conduct, Bell suffered and will continue to suffer damages.

127. As a direct and proximate cause of Alliance's conduct, Bryant is entitled to all damages provided for in 29 U.S.C. § 2617, including liquidated damages, costs and reasonable attorney's fees.

## COUNT VI: CONSTRUCTIVE DISCHARGE

128. Bell restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

129. Defendant's discriminatory and retaliatory conduct against Bell was so severe that it threatened her ability to perform her job duties.

130. Bell complained about Bluy's sexual comments and unwanted sexual advances.

131. Bell engaged in protected activities by gender discrimination complaints.

132. Following her complaints, Crespo's hostile work environment intensified.



133. Following her complaints, Bell's working conditions became even more intolerable.

134. As a result, Defendant's conduct against Bell forced her to sever her employment relationship with The Department of Veterans Affairs.

135. As a result of Defendant's conduct against Bell, her working conditions were so intolerable that a reasonable person would have felt compelled to resign.

136. As a result of Defendant's conduct against Bell, her wrongful termination was so imminent and inevitable that a reasonable person would have felt as if there was no other option but to resign.

137. As a direct and proximate result of Defendant's constructive discharge of Bell, she suffered and will continue to suffer damages.

### COUNT VII: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

138. Bell restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

139. Defendant intended to cause Bell emotional distress, or knew that their acts or omissions would result in serious emotional distress to Bell.

140. Defendant's conduct was so extreme and outrageous as to go beyond all possible bounds of decency and was such that it can be considered as utterly intolerable in a civilized community.

141. As a direct and proximate result of Defendant's acts and omissions as set forth above, Bell has suffered mental anguish of such a serious nature that no reasonable person could be expected to endure it.

142. As a direct and proximate result of Defendant's conduct and the resulting emotional distress, Bell have suffered and will continue to suffer damages.

### DEMAND FOR RELIEF

The Employee's Attorney.™



WHEREFORE, Plaintiff demand from Defendant the following:

(a) Issue a permanent injunction:

    (i) Requiring Defendant to abolish discrimination, harassment, and retaliation;

    (ii) Requiring allocation of significant funding and trained staff to implement all changes within two years;

    (iii) Requiring removal or demotion of all supervisors who have engaged in discrimination, harassment, or retaliation, and failed to meet their legal responsibility to promptly investigate complaints and/or take effective action to stop and deter prohibited personnel practices against employees;

    (iv) Creating a process for the prompt investigation of discrimination, harassment, or retaliation complaints; and

    (v) Requiring mandatory and effective training for all employees and supervisors on discrimination, harassment, and retaliation issues, investigations, and appropriate corrective actions;

(b) Issue an order requiring Defendant to restore Bell to one of the positions to which she was entitled by virtue of her application and qualifications, and expunge his personnel file of all negative documentation;

(c) An award against each Defendant of compensatory and monetary damages to compensate Bell for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

(d) An award of punitive damages against each Defendant in an amount in excess of $25,000;

(e) An award of reasonable attorneys fees and non-taxable costs for Plaintiffs' claims as allowable under law;

(f) An award of the taxable costs of this action; and



(g) An award of such other relief as this Court may deem necessary and proper.

        Respectfully submitted,

        */s/ Claire Wade*
        Claire I. Wade (0093174)
        **THE SPITZ LAW FIRM, LLC**
        25200 Chagrin Blvd., Suite 200
        Beachwood, OH 44122
        Phone: (216) 291-4744
        Fax:    (216) 291-5744
        Email: claire.wade@SpitzLawFirm.com

        *Attorney For Plaintiff Dominique Bell*



## JURY DEMAND

Plaintiff Dominique Bell demands a trial by jury by the maximum number of jurors permitted.

_____
Claire I. Wade

